James E. HOLSHOUSER, Jr., Plaintiff,

v.

Robert W. SCOTT, Governor of the State of North Carolina, et al., Defendants.

Civ. A. No. C-24-G-70.

United States District Court,
M. D. North Carolina,
Greensboro Division.

Argued Nov. 19, 1971.

Decided Dec. 29, 1971.

Charles E. Dameron, Greensboro, N. C., for plaintiff.

Robert Morgan, North Carolina, Atty. Gen., James F. Bullock, North Carolina Deputy Atty. Gen., James L. Blackburn, Raleigh, N. C., Staff Atty., for defendants, Robert W. Scott, Governor of the State of North Carolina, Thad Eure, Secretary of State of North Carolina, Robert Morgan, Atty. Gen. of the State of North Carolina, Brian Scott, Ernest J. House, L. H. Jones, Hiram H. Ward and Jerry S. Alvis, Members of the State Board of Elections of the State of North Carolina.

Z. H. Howerton, Jr., and Ralph A. Walker, Greensboro, N. C., for defendants, Z. H. Howerton, Jr., C. Clifford Frazier, Jr., and Perry S. Keziah, Members of the County Board of Elections of Guilford County, North Carolina.

Welch Jordan and William L. Stocks, Greensboro, N. C., for defendant, Joseph P. Shore, Clerk of Superior Court of Guilford County, North Carolina.

Before CRAVEN, Circuit Judge, and GORDON and JONES, District Judges.

**WOODROW WILSON JONES, Chief District Judge.**

Plaintiff seeks injunctive and declaratory relief against the defendants under the provisions of 42 U.S.C.A. §§ 1983 and 1988; and 28 U.S.C.A. §§ 1343(4) and 2201, contending that the manner of the election of regular Superior Court Judges in North Carolina denies him the equal protection of the laws as guaranteed by the 14th Amendment to the Constitution of the United States. The facts have been agreed upon by stipulation and all parties have moved for summary judgment.

The plaintiff is a citizen and voter of the 24th judicial district of North Carolina and brings this action on behalf of himself and all other citizens and voters so situated. The defendants are state and local officials charged with the duty of executing the state laws pertaining to the election of Superior Court Judges.

The Constitution of North Carolina directs the General Assembly to divide the state into a convenient number of Superior Court judicial districts and to provide for the election of one or more regular Superior Court Judges for each district who shall reside in the district for which he is elected.[1] It decrees that the principle of rotating judges among the districts is a salutary practice and shall be observed. In order to carry out this purpose the General Assembly is empowered to divide the State into a number of judicial divisions and the Chief Justice of the Supreme Court is authorized to assign the judges among the districts and divisions.[2] These judges have statewide jurisdiction and duties,[3] and are assigned by law certain local duties in their respective districts, such as the appointment of magistrates and the filling of vacancies in the office of the Clerk of Court.[4] Their salaries are paid by the State. The Constitution directs that they shall be elected by the qualified voters, and hold office for a term of eight years. They may be elected by the qualified voters of the State, or of their respective districts, as the General Assembly may prescribe.[5]

---

1. Art. IV, Sec. 9(1), North Carolina Constitution.
 *Superior Court districts.* The General Assembly shall, from time to time, divide the State into a convenient number of Superior Court judicial districts and shall provide for the election of one or more Superior Court Judges for each district. Each regular Superior Court Judge shall reside in the district for which he is elected. The General Assembly may provide by general law for the selection or appointment of special or emergency Superior Court Judges not selected for a particular judicial district.

2. Art. IV, Sec. 11, North Carolina Constitution.
 *Assignment of Judges.* The Chief Justice of the Supreme Court, acting in accordance with rules of the Supreme Court, shall make assignments of Judges of the Superior Court and may transfer District Judges from one district to another for temporary or specialized duty. The principle of rotating Superior Court Judges among the various districts of a division is a salutary one and shall be observed. For this purpose the General Assembly may divide the State into a number of judicial divisions. * * *

3. Art. IV. Sec. 12(3), North Carolina Constitution.
 *Superior Court.* Except as otherwise provided by the General Assembly, the Superior Court shall have original general jurisdiction throughout the state. * * *

4. Art. IV. Sec. 9(3) and 10, North Carolina Constitution.

5. Art. IV. Section 16, North Carolina Constitution.
 *Terms of office and election of Justices of the Supreme Court, Judges of the Court of Appeals, and Judges of the Superior Court.* Justices of the Supreme Court, Judges of the Court of Appeals, and regular Judges of the Superior Court shall be elected by the qualified voters and shall hold office for terms of eight years and until their successors are elected and qualified. Justices of the Supreme Court and Judges of the Court of Appeals shall be elected by the qualified voters of the State. Regular Judges of the Superior Court may be elected by the qualified voters of the State or by the voters of their respective districts, as the General Assembly may prescribe.

■■ In obedience to these constitutional commands the General Assembly divided the State into four (4) divisions and thirty (30) judicial districts. Each district has at least one judge and some have as many as three.[6] The General Assembly has prescribed that the regular judges shall be nominated in a primary election conducted in their respective districts but shall be elected in the general election by statewide vote. The plaintiff contends that this election procedure denies him the equal protection of the laws. While he avers in his complaint that both the North Carolina constitutional and statutory provisions pertaining to the election of these judges are violative of his federal constitutional rights, he abandons his attack upon the state constitution and concentrates on the state statutes.[7] There can be no doubt as to the validity of the provisions of the North Carolina Constitution requiring the election of Superior Court judges by districts or statewide as prescribed by the legislature; or that the state be divided into divisions and districts and judges rotate among the districts; or that they reside in their respective districts. Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656; Fortson v. Dorsey, 379 U.S. 433, 85 S. Ct. 498, 13 L.Ed.2d 401. Thus, the only issue for determination by this court is, as plaintiff now contends, whether the state statutes requiring regular Superior Court Judges to be nominated in the primary election by districts and elected in the general election by statewide vote denies the plaintiff and others similarly situated the equal protection of the laws. We answer the issue in the negative and hold the statutes to be valid.

The plaintiff contends that these judges must be nominated and elected by either a district-wide or statewide primary and general election and that a combination of the two as embodied in the statutes in question denies the voters of the state, individually and collectively, the equal protection of the laws.

He relies upon the cases of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663; Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, and Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45, and contends that the election procedure established by these statutes violates the "one man, one vote" principle declared by the court in these cases. It is noted that all of these cases dealt with the election of the representatives of the people—officials who make laws, levy and collect taxes, and generally manage and govern people. *Baker* and *Reynolds* dealt with the apportionment of the legislatures of the States of Tennessee and Alabama. *Gray* was concerned with the Georgia County Unit System whereby senators and congressmen were elected, and *Wesberry* dealt with congressional apportionment. *Avery* was concerned with County Commissioners with "general governmental powers over the entire geographic area served by the body", and *Hadley* dealt with the apportionment and election of Junior College District Trustees who have the power to "levy and collect taxes, issue bonds, * * * acquire property by condemnation, and in general manage the operations of the junior college, their powers are equivalent, for apportionment purposes, to those exercised by the county commissioners in *Avery*." None of these cases dealt with the apportionment or election of the judiciary. We find no case where the Supreme Court, a Circuit Court, or a District Court has applied the "one man, one vote" principle or rule to the judiciary. To hold with the plaintiff here and invalidate the election procedure permitted by these statutes, this court would be plowing new ground, and extending the "one man, one vote" principle far beyond the fields hereto-

6. G.S. § 7A–41.

7. G.S. § 163–108 and 109.

fore entered by the Supreme Court. The only case called to our attention which dealt with the specific question involved in this cause is a three-judge decision in Stokes v. Fortson, 234 F. Supp. 575 (N.D.Ga.1964), in which it was held that the one man, one vote doctrine does not extend to the judiciary. The facts of the *Stokes* case are identical to the case at bar, and the Georgia Constitution and statutes required the election of regular Superior Court Judges by statewide vote but permitted their nomination by circuits. The plaintiff, a citizen and voter of one of the circuits, brought the action complaining that he was denied the equal protection of the laws because the choice of the voters of the circuit may be overridden by the state electorate. The court held:

"In the first place, we are unable to discern any discrimination among voters or unequal weighting of votes of the sort condemned by the one man-one vote principle. Indeed, plaintiffs concede that there is no discrimination in either the nomination process or the election process considered separately. The vote of each person in the statewide election is equal; the electors of every judicial circuit are permitted to vote for the nominees from every judicial circuit. Also, the vote of each person in the judicial circuit is equal in the nominating process. Since every man's vote counts the same, the fact that the statewide electorate may override the choice of the circuit in no way offends the principles of Baker v. Carr and its progeny. See Alsup v. Mayhall, S.D.Ala. 1962, 208 F.Supp. 713.

"Secondly, even assuming some disparity in voting power, the one man-one vote doctrine, applicable as it now is to selection of legislative and executive officials, does not extend to the judiciary. Manifestly, judges and prosecutors are not representatives in the same sense as are legislators or the executive. Their function is to administer the law, not to espouse the cause of a particular constituency.

Moreover there is no way to harmonize selection of these officials on a pure population standard with the diversity in type and number of cases which will arise in various localities, or with the varying abilities of judges and prosecutors to dispatch the business of the courts. An effort to apply a population standard to the judiciary would, in the end, fall of its own weight."

Two other cases are cited which deal with the general issue involved here. Buchanan v. Rhodes, 249 F.Supp 860 (N.D.Ohio 1960), appeal dismissed, 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3; and New York State Association of Trial Lawyers v. Rockefeller, 267 F.Supp. 148 (S.D.N.Y.1967). In *Buchanan,* the plaintiffs, litigants and residents of a populous county in Ohio, contested the constitutional and statutory requirement that each county be allotted at least one judge in the Court of General Jurisdiction, contending that such requirement resulted in a disproportionate number of judges as between large and small counties, and that they were thereby denied the equal protection of the laws. The court, speaking to the plaintiffs' attempt to draw a close analogy to the legislative reapportionment cases, stated:

" * * * [t]hey have failed to grasp the thrust of that line of authority. The first principle inherent in our republican form of government is that individual citizens submit to rule by legislative fiat enacted by a majority of a popularly elected legislative body working within a constitutional framework. When the representatives to that legislative body are malapportioned among the several districts within the political unit, then the voting strength of the individual citizens in these subdivisions is of unequal weight. It is the dilution of power in the vote of citizens situated in districts suffering from inadequate representation which brings into play the Equal Protection Clause. And there can be no reasonable justification for a system of apportionment

which ignores the relative population of each political subdivision because 'Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests.' Reynolds v. Sims, 377 U. S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Thus the ratio which the population of each political subdivision bears to the population of the whole political unit has become, right or wrong, the sole criterion for judging the equality of representation and voting strength for the individual citizens within each political subdivision.

"But in determining the reasonableness of a judicial system which permits at least one judge operating a court of general jurisdiction in each county, we must recognize one glaring distinction between the functions of legislators and the functions of jurists. Judges do not represent people, they serve people. They must, therefore, be conveniently located to those people whom they serve. Location, then, is one of many significant factors which the legislature may properly consider when carrying out its constitutional mandate to create an effective judicial system. The State constitutional provision requiring one judge per county bears a reasonable relation to the State's aim: a conveniently effective judicial system; the efforts heretofore by the legislature to increase the number of jurists in populous counties reflect no departure from reason. Therefore we see no constitutional basis for the plaintiffs' complaint. On the contrary, we recognize, as a matter of law, that the relative population of the counties of Ohio can not be, as the plaintiffs argue, the sole criterion of apportioning judges among the counties."

In *Rockefeller,* the plaintiffs sought declaratory and injunctive relief requiring the state to establish "judicial reapportionment" designed to eliminate court delay in the more populous counties and rested their claim on the assumption that there is a federally protected right to have state court judges apportioned among judicial districts and counties in such manner as to prevent any greater delay in the trial of cases in one area than another. The plaintiffs relied upon Reynolds v. Sims, *supra,* and other cases declaring the one man, one vote principle. The court dismissed the action, declaring:

"The state judiciary, unlike the legislature, is not the organ responsible for achieving representative government. Nor can the direction that state legislative districts be substantially equal in population be converted into a requirement that a state distribute its judges on a per capita basis."

The court then quoted extensively from *Buchanan,* and said:

"In contrast to legislative reapportionment, population is not necessarily the sole, or even the most relevant, criterion for determining the distribution of state judges. The volume and nature of litigation arising in various areas of the state bears no direct relationship to the population of those areas."

While *Buchanan* and *Rockefeller* deal with the apportionment of judges rather than their election, they nevertheless point up the many pitfalls and briar patches which the courts will encounter if the one man, one vote principle is made applicable to the judiciary. The function of judges, contrary to some popular views of today, is not to make, but interpret the law. They do not govern nor represent people nor espouse the cause of a particular constituency. They must decide cases exclusively on the basis of law and justice and not upon the popular view prevailing at the time.

■ We hold that the one man, one vote rule does not apply to the state judiciary, and therefore a mere showing of a disparity among the voters or in the population figures of the district would not be sufficient to strike down this election procedure and these statutes. A

showing of an arbitrary and capricious or invidious action or distinction between citizens and voters would be required. In other words, this court must find that the State has not only distinguished between citizens and voters, but that such distinctions are arbitrary and capricious or invidious. The Supreme Court said in *Avery* that:

"the Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious. The conclusion of Reynolds v. Sims was that bases other than population were not acceptable grounds for distinguishing among citizens when determining the size of districts used to elect members of state legislatures. We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body."

There has been no showing of arbitrary and capricious action by the legislature or that the distinctions, if any, between the citizens and voters are invidious. The plaintiff says his vote cast in the primary election is diluted, and indeed may be overridden by the general election vote. He does not contend that there is discrimination in either the nomination process or the election process when considered separately, but says the statute which permits nomination by district and election statewide, serves or achieves no useful or legitimate state purpose, and is invidious discrimination and violative of the Equal Protection Clause. We are unable to find discrimination among voters or an unequal weighing of votes which would amount to arbitrary or capricious action or invidious distinctions. The vote of each person in the statewide election is equal and the voters of every judicial district are permitted to vote for the nominees from all districts. The vote of each person in the judicial district is equal in

the primary election. Since every person's vote counts the same in each election the fact that in a statewide election the voters may override the choice of a district in the primary election does not constitute arbitrary and capricious or invidious distinctions. In determining whether there is a reasonable basis for the procedure and that it serves or achieves a legitimate state purpose as distinguished from being arbitrary or capricious, we refer to McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L. Ed.2d 393, where the court said:

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

These judges are hybrid officials with both local and statewide functions and authority. The requirement that he reside in the district from which he is elected is a matter of convenience, making him available to hear emergency matters, and convenience is an essential factor in arranging an effective judicial system. He rotates among the districts of his division, and may be assigned beyond his division by the Chief Justice. Thus, there is a reasonable basis for the election procedure established and it serves and achieves a legitimate state purpose and is not arbitrary and capricious.

The plaintiff says that such procedure is unfair and that this federal court should strike it down as an invasion of his constitutional rights. We have no authority to pass upon the fairness of the election of Superior Court Judges in

North Carolina. That is a political question to be resolved by the people and the legislature. We can only determine the constitutional validity of the statutes involved.

 The contention is made that the statutes involved here deny North Carolina citizens the republican form of government guaranteed by Art. IV. Sec. 4 of the Constitution of the United States. The test of a republican form of government cannot be made to turn upon the election of the trial or appellate court judges. If this be the test then the United States Government is not a republic for the entire federal judiciary is appointed. North Carolina could by her Constitution provide for the appointment of all State judges without violating any provision of the federal Constitution. It is apparent, therefore, that the election of Superior Court judges is not a necessary characteristic of a republican form of government and is not required by the Constitution of the United States. Anyway, under the teachings of the landmark case of Luther v. Borden, 48 U.S. 1, 7 How. 1, 12 L.Ed. 581 (1849), this would be a political rather than a judicial question.

The defendants' Motions for Summary Judgment will be allowed and an order dismissing the action will be entered.

CRAVEN, Circuit Judge (dissenting):

I agree with my brothers that judges need not be elected, but if the state chooses to elect them, I think its election scheme must accord to the voters equal protection of the laws. Whether or not judges "make" law, see B. Cardozo, "Lecture III. The Method of Sociology, The Judge as a Legislator" in The Nature of the Judicial Process (1921), it is clear to me that the judicial branch of government *is* a branch of government. Superior Court Judges of North Carolina are elected by a two-step procedure. A nominee from a political party is selected by the voters of each judicial district. The voters of the entire state then elect the superior court judge for each judicial district from among the nominees selected by each district. The elected judge serves both the people who nominated him in his own district *and* the people of the state who had no voice in his nomination. For example, the people of Mecklenburg County are presently allowed to nominate four resident judges of the superior court in party primary. These judges, upon statewide election, rotate and hold court over all of the 25 counties of the Western Division of North Carolina, and occasionally may be sent into other divisions of the state. When they hold court in Buncombe and other counties they exercise judicial power over people who were denied participation in the primary nomination procedure. That the people of Buncombe have the theoretical right to vote against such nominees in the general election does not save the scheme, for the primary is an integral part of the elective machinery and procedure. *See* Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). A voter is not only entitled to switch his party allegiance and vote for the nominee of another party, but is also entitled to participate in the selection of his own party nominee.

North Carolina voters are denied equal protection of the laws with respect to the election of all superior court judges except the superior court judge for whom they may vote in their own judicial district primary. For each superior court judge to be elected from each judicial district the statutory scheme creates two classes of voters: (1) those voters residing in the judicial district who may participate in the total election of that judge by voting first for the party nominee in the primary and then for the judge from among the nominees, if more than one, in the general election, and (2) those voters residing outside the district who may participate only partially in the election of that judge by voting in what is sometimes an unopposed general election.

The second group of voters suffers harm doubly from this classification:

(1) People residing outside a superior court judge's district are subjected to the exercise of judicial power by an official whom they did not elect.

(2) Moreover, as the state recognizes, these people have an interest in the proper administration of their laws statewide, and have been effectively denied the franchise except for judges nominated by them in a given district.

That each voter can participate fully in the election of the superior court judge from his own district does not satisfy his admitted interest in choosing other superior court judges who will function throughout the state.

In summary, the statutory scheme for election of judges in North Carolina accords the right of nomination in a primary to some of the people with respect to some of the judges and denies it arbitrarily and capriciously to others. Such a scheme is a denial of equal protection of the laws and is condemned by the Fourteenth Amendment to the Constitution of the United States.