Henry KIRKSEY, John Q. Adams, Edward Blackmon, Jr., Alvin E. Boyce, Edgar Bridges, Owen H. Brooks, Ben F. Burckett, Obie Clark, Eugene Daniels, James Davis, Arwilla Davison, André Deberry, Evan Doss, Jr., William Fleming, Roy Garth, Carsie A. Hall, Jim Davis Hull, Edward K. Jackson, Frank Mingo, Jessie Pendleton, Rev. Robert L. Seals, Sr., Janette Self, Nausead Stewart, Monzell Stowers, and Denise Walls, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

William A. ALLAIN, Governor of Mississippi; Edwin L. Pittman, Attorney General of Mississippi; Dick Molpus, Secretary of State of Mississippi, in their Official capacities and as Members of the Mississippi State Board of Election Commissioners; State Board of Election Commissioners; State of Mississippi Democratic Party Executive Committee, by and through its Chairman, Steve Patterson, and State of Mississippi Republican Party Executive Committee, by and through its Chairperson, Ebie Spivey, Defendants.

Civ. A. No. J85–0960.

United States District Court,
S.D. Mississippi,
Jackson Division.

May 21, 1986.

Carroll Rhodes, Hazlehurst, Miss., Johnnie L. Walls, Jr., Greenville, Miss., William L. Robingon, Samuel Issacharoff, Patricia M. Hanrahan, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., Lynda C. Robinson, Jackson, Miss., for plaintiffs.

Robert M. Arenston, Steven J. Kirchmayr, Deputy Attys. Gen., Hubbard T. Saunders, IV, Sp. Counsel, Jackson, Miss., for defendants.

Before CLARK, Circuit Judge, and BARBOUR and WINGATE, District Judges.

## MEMORANDUM OPINION AND ORDER

Plaintiffs, a class consisting of 25 black, registered voters in Mississippi, filed suit

alleging Defendants[1] violated the Fourteenth and Fifteenth Amendments and §§ 2 and 5 of the Voting Rights Act of 1965, as amended, by failing to: (1) submit for preclearance under § 5 of the Voting Rights Act certain Mississippi statutes pertaining to judicial elections; (2) adhere to the "one-person, one-vote" principle in the creation of chancery and circuit court districts in Mississippi; and (3) draw district lines for judicial elections which do not dilute black voting strength. Plaintiffs also claim that the use of multi-member judicial districts for the election of some judges dilutes black voting strength in violation of § 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. This matter is presently before the Court on Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary or Permanent Injunction and/or a Declaratory Judgment, requesting the three-judge court[2], convened pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973c, to: (1) declare that certain Mississippi statutes pertaining to state judicial elections are subject to § 5 of the Voting Rights Act; and (2) enjoin enforcement of those statutes which have not been precleared pending compliance with § 5 of the Voting Rights Act.

Following oral argument on Plaintiffs' Motion, the three-judge court delivered a bench opinion, holding that: (1) § 5 of the Voting Rights Act applies to Mississippi legislative and executive action which establishes or seeks to administer any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting for judicial elections; (2) enforcement or implementation of any Mississippi legislative or executive action which establishes or seeks to administer any voting qualification or prerequisite to voting, or standard, practice or procedure pertaining to the conduct of judicial elections which is different from that in force and effect on November 1, 1964, the effective date of the Voting Rights Act, or which is different from a statute that has been precleared pursuant to § 5 should be enjoined; and (3) legislative recodification of Mississippi statutes which do not change the voting qualifications or prerequisites to voting, or standards, practices or procedures with respect to voting for judicial elections as they existed on November 1, 1964, or as precleared by the United States Attorney General should not be enjoined. This Opinion states the reasons for the ruling of the three-judge court.

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, requires a State to submit "any voting qualification or prerequisite to voting, or standard, practice or procedure ... different from that in force and effect on November 1, 1964" to the Attorney General for preclearance or institute an action in the United States District Court for the District of Columbia for a declaratory judgment that any such qualification, prerequisite to voting, or standard, practice or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. The United States Supreme Court, "[a]fter canvassing the legislative history of the [Voting Rights] Act," concluded that Congress, by enacting the Voting Rights Act, meant "to reach any state enactment which altered the election law of a covered

1. Defendants are: William A. Allain, Governor of Mississippi; Edwin L. Pittman, Attorney General of Mississippi; Dick Molpus, Secretary of State of Mississippi; in their official capacities and as members of the Mississippi State Board of Election Commissioners; State Board of Elections Commissioners; State of Mississippi Democratic Party Executive Committee, by and through its Chairman, Steve Patterson; and State of Mississippi Republican Party Executive Committee, by and through its Chairperson Ebie Spivey.

2. On March 25, 1986, a three-judge court, composed of Chief Judge Charles Clark for the United States Court of Appeals for the Fifth Circuit and Judges William H. Barbour, Jr. and Henry T. Wingate for the United States District Court for the Southern District of Mississippi, was convened to determine whether the changes in voting for judicial elections are covered by § 5 of the Voting Rights Act of 1964, as amended, 42 U.S.C. § 1973c, and, if so, whether Defendants have implemented the changes without preclearance, and if so, what relief is appropriate. *See, e.g., Lockhart v. United States,* 460 U.S. 125, 103 S.Ct. 998, 74 L.Ed.2d 863 (1983).

State in even a minor way." *Dougherty County, Georgia Board of Education v. White,* 439 U.S. 32, 37, 99 S.Ct. 368, 372, 58 L.Ed.2d 269 (1978) (quoting *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969)). Indeed, the Supreme Court in *Allen* stated that Congress intended § 5 to reach "all changes, no matter how small...." 393 U.S. at 568, 89 S.Ct. at 833.

In cases following *Allen* which interpreted § 5, the Supreme Court has "consistently adhered to the principles of broad construction set forth in *Allen.*" *Dougherty County, Georgia Board of Education v. White,* 439 U.S. at 38, 99 S.Ct. at 372. This principle of broad construction recently led the United States District Court for the Eastern District of North Carolina, in *Haith v. Martin,* 618 F.Supp. 410, 413 (E.D.N.C.1985), *pet. for cert. filed,* 54 U.S. L.W. 3463 (Dec. 6, 1985), to hold that "... the fact that an election law deals with the election of the judiciary does not remove it from the ambit of § 5." Given the expansive interpretation of the Voting Rights Act and § 5, this Court is compelled to agree with the pronouncement in *Haith v. Martin.*

Defendants urge us to reject the holding in *Haith v. Martin* and exempt judicial elections from the scope of § 5 because: (1) § 2(b) of the Voting Rights Act demonstrates that the Act applies only to "representatives"; (2) the Voting Rights Act and its dilution concept do not apply to judicial elections; and (3) the State relied upon the interpretation of the United States Department of Justice that the Act excludes judicial elections.

Section 2(b) of the Voting Rights Act, 42 U.S.C. § 1973(b), states that:

A violation of [the Act] ... is established if ... it is shown that the political processes leading to nomination or election ... are not equally open to participation by members of a class of citizens protected by [the Act] in that its members have less opportunity than other members of

the electorate to participate in the political process and to elect *representatives* of their choice. [Emphasis added].

Defendants argue that since the term "representative" does not include judges, *see, e.g., Holshouser v. Scott,* 335 F.Supp. 928 (M.D.N.C.1971), *aff'd.,* 409 U.S. 807, 93 S.Ct. 43, 34 L.Ed.2d 68 (1972); *Buchanan v. Rhodes,* 249 F.Supp. 860 (N.D.Ohio 1966), *appeal dismissed,* 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3 (1966), then the Voting Rights Act does not apply to judicial elections. However, § 5 of the Voting Rights Act does not contain such a limitation. Section 5 states that *any* voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964, must be submitted for preclearance to the Attorney General or be declared by the United States District Court for the District of Columbia not to have the purpose or effect of denying or abridging the right to vote on account of race or color. Clearly, the unqualified language of § 5 coupled with the expansive interpretation given § 5 by the United States Supreme Court mandates that judicial elections are subject to § 5 of the Voting Rights Act. As stated in *Haith v. Martin,* 618 F.Supp. at 413, "... the Act applies to all voting without any limitation as to who, or what, is the object of the vote."

Defendants next rely on decisions holding that the dilution concept under the Fourteenth and Fifteenth Amendments does not apply to state judicial elections. Defendants' reliance on these decisions is misplaced. None of these decisions dealt with, or attempted to interpret, the Voting Rights Act. Accordingly, these decisions have no application here where the Voting Rights Act is at issue.

Finally, Defendants submit that the Voting Rights Act does not apply to the state judiciary because the Department of Justice has interpreted the Act as not applying to the state judiciary.[3] Even assuming ad-

---

3. The Court notes that Defendants offered no     proof to show that the Department of Justice

ministrative interpretations are to be given deference in this field of the law, *cf. United States v. Board of Comm'rs of Sheffield,* 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978), these Defendants cannot claim reliance on the administrative interpretations of the Department of Justice. In the past, these Defendants have sought and obtained from that Department preclearance of statutes pertaining to judicial elections. Indeed, the record before us fails to show that the Department of Justice has ever refused to consider a statute submitted to it by Mississippi on the ground that the statute pertained to judicial elections.

■ Alternatively, Defendants submit that certain statutes challenged by Plaintiffs are merely a recodification of laws that existed prior to the effective date of the Act and, therefore, are not subject to § 5. The Court agrees. Section 5 is triggered only in instances where the voting qualification or prerequisite to voting, or standard, practice or procedure for voting is "different from" that in full force and effect on November 1, 1964. To the extent that recodification of laws does not change the voting qualification or prerequisite to voting, or standard, practice or procedure for voting as it existed on November 1, 1964, or as precleared, those particular laws are not subject to § 5 or the injunction ordered by this Court.

Accordingly, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary or Permanent Injunction and/or a Declaratory Judgment is hereby granted pending preclearance of the affected statutes or further order of this Court.

does indeed interpret the Act to exclude judicial elections, nor has done so in the past, and

merely argued this position in opposition to Plaintiffs' Motion.