BRIAN L. BLANKENSHIP, THOMAS J. DIMMOCK, AND FRANK D. JOHNSON, PLAINTIFFS v. GARY BARTLETT, AS EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS, ROY COOPER, AS ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, AND NORTH CAROLINA STATE BOARD OF ELECTIONS, DEFENDANTS

No. COA06-1012

(Filed 3 July 2007)

## 1. Elections— judicial—one man, one vote not applicable

The principle of one man, one vote is not constitutionally required in the election of judges because judges serve the people rather than represent them.

## 2. Evidence— hearsay—AOC preclearance documents—public record not excluded

The trial court erred in a judicial districting case by admitting an exhibit from the AOC Director only on a limited basis. Public records and reports are not excluded by the hearsay rule; this document was prepared pursuant to the AOC Director's statutory duty to obtain preclearance of districts from the United States Department of Justice under the Voting Rights Act and was admissible under N.C.G.S. § 8C-1, Rule 803(8).

**3. Elections— judicial districts—not arbitrary**

The trial court erred by concluding that the General Assembly had acted arbitrarily and capriciously when it established Superior Court districts for Wake County. The concerns addressed by the General Assembly were compelling state interests, and the facts in the record reasonably justify the General Assembly's action.

Appeal by defendants from judgment and order entered 8 February 2006 by Judge Donald L. Smith in Superior Court, Wake County. Heard in the Court of Appeals 19 March 2007.

*Akins, Hunt & Fearon, P.C., by Donald G. Hunt, Jr., for plaintiffs-appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorneys General Alexander McC. Peters, Susan K. Nichols, and Karen E. Long, for defendants-appellants.*

WYNN, Judge.

In *Stephenson v. Barlett,* our Supreme Court held that the North Carolina Constitution guarantees that "the right to vote on equal terms is a fundamental right" in the context of representative positions.[1] Here, Plaintiffs contend that the holding in *Stephenson* extends beyond representative positions to include the election of judges. Because the principle of "one person, one vote" is constitutionally required only in the context of elections for representative positions,[2] we conclude that the rule does not apply to the election of judges, who "do not represent people, they serve people."[3] Accordingly, we reverse the judgment of the trial court.

1. 355 N.C. 354, 378, 562 S.E.2d 377, 393 (2002) (citation and quotation omitted), *reh'g denied,* 357 N.C. 470, 587 S.E.2d 342 (2003). Likewise, the federal Constitution "imposes one ground rule for the development of arrangements of local government: a requirement that units *with general governmental powers over an entire geographic area* not be apportioned among single-member districts of substantially unequal population." *Avery v. Midland County,* 390 U.S. 474, 485-86, 20 L. Ed. 2d 45, 54 (1968) (emphasis added).

2. *See Holshouser v. Scott,* 335 F.Supp. 928, 932 (M.D.N.C. 1971) ("We hold that the 'one man, one vote' rule does not apply to the state judiciary, and therefore a mere showing of a disparity among the voters or in the population figures of the district would not be sufficient to strike down this election procedure and these statutes."), *aff'd mem.,* 409 U.S. 807, 34 L. Ed. 2d 68 (1972).

3. *Id.* at 932 (quoting *Buchanan v. Rhodes,* 249 F.Supp. 860, 865 (N.D. Ohio), *appeal dismissed,* 385 U.S. 3, 17 L. Ed. 2d 3 (1966)).

## BLANKENSHIP v. BARTLETT

[184 N.C. App. 327 (2007)]

On 6 December 2005, Plaintiffs Brian Blankenship, Thomas J. Dimmock, and Frank D. Johnson, who are citizens, taxpayers, and registered voters in Wake County, filed this lawsuit against the North Carolina State Board of Elections and Attorney General to challenge the constitutionality of the Superior Court districts in Wake County, as established by North Carolina General Statute § 7A-41 (2004). Plaintiffs argue that the current judicial districting plan for Wake County violates the Equal Protection Clause of the North Carolina State Constitution because the districts are disproportionate in terms of population.

Section 7A-41 divides Wake County into four judicial districts: 10-A, 10-B, 10-C, and 10-D. Under the statute and according to the 2000 U.S. Census, the six resident Superior Court Judges allotted to Wake County are elected as follows: Two in District 10-A, with 64,398 residents; two in 10-B, with 281,493 residents; one in District 10-C, with 158,812 residents; and one in 10-D, with 123,143 residents. Plaintiffs contend that the disproportionate size of the districts and number of judges elected, particularly of District 10-A, unconstitutionally dilute the voting power of each individual Wake County resident. In their initial complaint, Plaintiffs sought, *inter alia,* a declaratory judgment that the judicial districts are unconstitutional and an injunction enjoining and restraining Defendants from holding any election for the office of Superior Court Judge in Wake County.

On 9 December 2005, then Chief Justice I. Beverly Lake of the North Carolina Supreme Court designated this matter as "exceptional" pursuant to Rule 2.1 of the General Rules of Practice and assigned an Emergency Superior Court Judge to hear the case. After expedited discovery and motions, the trial court entered a judgment and order on 8 February 2006, concluding that the Wake County judicial districts are unconstitutional as drawn and granting declaratory judgment and a permanent injunction to Plaintiffs. The trial court stayed the judgment and order pending appeal.

Defendants timely appealed, arguing that the trial court erred by (I) concluding that the Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution requires population proportionality in the establishment of Superior Court districts; (II) not treating documents submitted by the Administrative Office of the Courts to the United States Department of Justice to obtain pre-clearance of 1993 N.C. Session Laws 321 as a record of regularly conducted activity or a public record or report; and (III) concluding that the General Assembly acted arbitrarily and capriciously when it

established the Superior Court divisions for Wake County. We agree with all of Defendants' arguments.

I.

[1] Defendants first argue that the trial court erred by concluding that the Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution requires population proportionality in the establishment of Superior Court districts. Defendants contend that the principle of "one person, one vote" does not apply to judicial elections under either the United States Constitution or our North Carolina State Constitution. We agree, noting that this is a question of first impression to our State's appellate courts.[4]

The Equal Protection Clause, first placed in our State Constitution in 1971, declares that "[n]o person shall be denied the equal protection of the laws[.]" N.C. Const. art. I, § 19. The United States Supreme Court has held that the cognate Equal Protection Clause of the Fourteenth Amendment to the federal constitution requires that the principle of "one person, one vote" govern legislative districting and apportionment. *See Reynolds v. Sims*, 377 U.S. 533, 565-66, 12 L. Ed. 2d 506, 529 (1964) ("Since the achieving of fair and effective representation for all citizens is concededly the basic aim of legislative apportionment, we conclude that the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators."). Our state Supreme Court has likewise concluded that "the right to vote on equal terms is a fundamental right" guaranteed by the Equal Protection Clause. *See Stephenson v. Bartlett*, 355 N.C. 354, 378, 562 S.E.2d 377, 393 (2002) (citations omitted) (case brought by citizens and registered voters to challenge legislative redistricting plans approved by the North Carolina General Assembly), *reh'g denied*, 357 N.C. 470, 587 S.E.2d 342 (2003).

---

4. In their brief, Plaintiffs assert that "[t]he only significant difference between this case and *Stephenson* [*v. Bartlett*, 355 N.C. 354, 562 S.E.2d 377 (2002)] is that the *Stephenson* plaintiffs, in addition to their equal protection challenge, also alleged that the General Assembly's districting plan violated the 'Whole County Provisions' found in [North Carolina Constitution] Article II, § 3(1)-(2) and 5(1)-(2)."

*Stephenson*, however, involved districts and elections for a different type of office altogether, namely, for legislative positions, such that some voters "may not enjoy the same representational influence or 'clout' " as others. 355 N.C. at 377, 562 S.E.2d at 393. Given that judicial elections do not implicate the same concerns, nor the same statute and constitutional section, we conclude that *Stephenson*, while relevant, is not controlling precedent, and this is indeed a question of first impression.

Nevertheless, federal courts including the United States Supreme Court have drawn a distinction between the requirement of "one person, one vote" in elections for representative positions and those for judicial positions:

> [E]ven assuming some disparity in voting power, the one man-one vote doctrine, applicable as it now is to selection of legislative and executive officials, does not extend to the judiciary. Manifestly, judges and prosecutors are not representatives in the same sense as are legislators or the executive. Their function is to administer the law, not to espouse the cause of a particular constituency. Moreover there is no way to harmonize selection of these officials on a pure population standard with the diversity in type and number of cases which will arise in various localities, or with the varying abilities of judges and prosecutors to dispatch the business of the courts. An effort to apply a population standard to the judiciary would, in the end, fall of its own weight.

*Holshouser v. Scott*, 335 F. Supp. 928, 931 (M.D.N.C. 1971) (quoting *Stokes v. Fortson*, 234 F. Supp. 575 (N.D. Ga. 1964)), *aff'd mem.*, 409 U.S. 807, 34 L. Ed. 2d 68 (1972). Significantly, in *Holshouser*, the Middle District Court of North Carolina could "find no case where the Supreme Court, a Circuit Court, or a District Court has applied the 'one man, one vote' principle or rule to the judiciary." *Id.* at 930. Indeed, in *Wells v. Edwards*, the United States Supreme Court affirmed a district court's rejection of a claim based on the "one person, one vote" principle applied to the election of Louisiana Supreme Court justices. *See* 347 F. Supp. 453 (M.D. La. 1972), *aff'd mem.*, 409 U.S. 1095, 34 L. Ed. 2d 679 (1973).[5]

---

5. Plaintiffs assert that "the Fourth Circuit Court of Appeals largely adopted the *Wells* dissent as law in the context of electing North Carolina superior court judges." The relevant language from the Fourth Circuit states that the court "would be compelled to conclude that the election of superior court judges in North Carolina implicates the goal of equal protection and issues of fair and effective representation." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 953 (4th Cir. 1993), *cert. denied*, 510 U.S. 828, 126 L. Ed. 2d 60 (1993).

Nonetheless, we observe that the Fourth Circuit also stated it was bound by the *Wells* decision, and the rejection of the notion that the Equal Protection Clause is not implicated in judicial elections was based on the question of impermissible vote dilution, not on the principle of "one person, one vote"; as such, any position on the necessity of population proportionality was dicta. *See id.* at 954; *see also Voter Information Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 210-12 (5th Cir. 1980) (recognizing distinction between claims grounded in one-person, one-vote and those based on vote dilution in a challenge to method of electing judges).

Of course, we recognize that when "construing and applying our [state] laws and the Constitution of North Carolina, [North Carolina appellate courts are] not bound by the decisions of federal courts, including the Supreme Court of the United States." *State ex rel. Martin v. Preston*, 325 N.C. 438, 449-50, 385 S.E.2d 473, 479 (1989). Still, in our discretion, "we may conclude that the reasoning of such decisions is persuasive." *Id.* at 450, 385 S.E.2d at 479. Indeed, as this Court has previously noted, "[a]lthough decisions of the Supreme Court of the United States construing federal constitutional provisions are not binding on our courts in interpreting cognate provisions in the North Carolina Constitution, they are, nonetheless, highly persuasive." *Stam v. State*, 47 N.C. App. 209, 214, 267 S.E.2d 335, 340 (1980) (citation omitted), *aff'd in part and rev'd on other grounds in part*, 302 N.C. 357, 275 S.E.2d 439 (1981).

When "interpreting our Constitution—as in interpreting a statute—where the meaning is clear from the words used, we will not search for a meaning elsewhere." *Preston*, 325 N.C. at 449, 385 S.E.2d at 478-79 (citation omitted). Additionally, we emphasize that "[a]ll power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution." *Id.* at 448-49, 385 S.E.2d at 478 (citing *McIntyre v. Clarkson*, 254 N.C. 510, 515, 119 S.E.2d 888, 891 (1961)).

In *Preston*, our Supreme Court construed a state statute related to the election, districts, and terms of office for various Superior Court judgeships. 325 N.C. at 443, 385 S.E.2d at 475. Discussing the constitutionality of postponing the election dates for certain judgeships, the Court noted that our state Constitution specified the timeline for legislative and executive elections, but used more general "from time to time" language for judicial elections. *Id.* at 454, 385 S.E.2d at 481. The Court concluded that "[t]he distinction between those [legislative and executive] provisions of our Constitution and the provisions before us in this case concerning judges must have been intentional and further evidences a constitutional intent for flexibility in setting the times for holding judicial elections." *Id.* We find that reasoning to be applicable to the instant case.

Here, North Carolina General Statute § 7A-41, establishing the Superior Court judicial districts in North Carolina, as well as the number of judges assigned to each district, was passed into law pursuant to Article IV, Section 9 of the North Carolina Constitution. According to that Section, "[t]he General Assembly shall, from time to

time, divide the State into a *convenient number* of Superior Court judicial districts and shall provide for the election of one or more Superior Court Judges for each district." N.C. Const. art. IV, § 9(1) (emphasis added).

By contrast, the constitutional provisions governing the election of state senators and representatives require that those officials "shall represent, as nearly as may be, an equal number of inhabitants." N.C. Const. art. II, §§ 3(1), 5(1). That population proportionality requirement was added through an amendment in 1968, proposed by the General Assembly and approved by voters to conform with the judicial rulings on "one person, one vote." *See* John L. Sanders, Director of the Institute of Government, University of North Carolina at Chapel Hill, *Our Constitutions: A Historical Perspective*, at http://statelibrary.dcr.state.nc.us/nc/stgovt/preconst.htm#1971. None of this language—not the requirement for proportionality for state legislative elections, nor the lack thereof with respect to state judicial elections—was changed in the 1971 North Carolina Constitution, which was adopted by voters after comprehensive review and revision. *Id.*

Accordingly, we find that the distinction between these constitutional provisions "must have been intentional" and "evidences a constitutional intent" not to require population proportionality in state judicial elections. *See Preston*, 325 N.C. at 454, 385 S.E.2d at 481. We therefore hold that the trial court erred by concluding otherwise.

II.

[2] Next, Defendants contend that the trial court erred by not treating documents submitted by the Administrative Office of the Courts (AOC) to the United States Department of Justice (USDOJ) to obtain pre-clearance of 1993 N.C. Session Laws 321 as a record of regularly conducted activity or a public record or report. We agree.

At the beginning of the trial, Plaintiffs' counsel sought to strike the affidavit of Paul Reinhartsen, AOC Research Specialist for Legal Services, including the attached Exhibit A, which was a copy of the documentation submitted to and received from the USDOJ with regard to preclearance for the proposed state law adding a judgeship to District 10-A. Plaintiffs' counsel argued that Exhibit A included hearsay and information about which the author, AOC Director James C. Drennan, had no personal knowledge. Counsel for the State Board of Elections responded that Exhibit A was a "public record, prepared

by public officials and pursuant to their statutory obligation[,]" and was therefore "an exception to the hearsay rule." After a lengthy discussion with both parties as to the nature and contents of the exhibit, the trial court reiterated that he would "let it in, but [he would]. be very careful, . . . to make sure [he] base[d] no findings on anything contained in [the AOC exhibit] that is hearsay or is made without personal knowledge."

North Carolina Rule of Evidence 803(8) provides that "Public Records and Reports" are not excluded by the hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(8) (2005). Such records are defined, *inter alia*, as "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report, . . . unless the sources of information or other circumstances indicate lack of trustworthiness." *Id.*

Here, Exhibit A was prepared by the Director of the AOC, pursuant to his statutory duty to gain preclearance from the USDOJ under the Voting Rights Act. *See* N.C. Gen. Stat. § 120-30.9C (2005) ("The [AOC] shall submit to the Attorney General of the United States . . . all acts of the General Assembly that amend, delete, add to, modify or repeal any provision of . Chapter 7A of the General Statutes of North Carolina which constitutes a 'change affecting voting' under Section 5 of the Voting Rights Act of 1965."). Exhibit A falls within this language; it was a copy of the documentation sent by the AOC to the USDOJ pursuant to its statutory duty under N.C. Gen. Stat. § 120-30.9C.

We hold that the trial court should have considered Exhibit A in its entirety, as the hearsay rule did not apply to its contents. Accordingly, the trial court erred by admitting the exhibit on only a limited basis.

## III.

[3] Finally, Defendants argue that the trial court committed error by concluding that the General Assembly acted arbitrarily and capriciously when it established the Superior Court districts for Wake County. We agree.

In light of the AOC affidavit and Exhibit A discussed above, it is evident that the General Assembly consulted with the AOC prior to enacting the statute that established a new judgeship in District 10-A. Exhibit A contains analysis as to population and caseload

of judicial districts, as well as the AOC Director's recommendations for where to create new judgeships. Although the record also contains concerns expressed with respect to an additional judgeship for Wake County, and indications that the General Assembly did not engage in wide consultations, basing their decision on the recommendation of the AOC Director was not "arbitrary and capricious." Rather, passage of the statute creating the new judgeship in District 10-A followed investigation and analysis and, as such, was the result of logical reasoning.

According to the United States Supreme Court:

> The constitutional safeguard [of the Equal Protection Clause of the Fourteenth Amendment] is offended only if [a law's] classification [of groups of citizens] rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside [as arbitrary or capricious] if any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 399 (1961); *see also Town of Beech Mountain v. County of Watauga,* 324 N.C. 409, 378 S.E.2d 780, *cert. denied,* 493 U.S. 954, 107 L. Ed. 2d 351 (1989); *Jones v. Weyerhaeuser Co.,* 141 N.C. App. 482, 539 S.E.2d 380 (2000), *appeal dismissed and disc. rev. denied,* 353 N.C. 525, 549 S.E.2d 858 (2001).

The concerns addressed by the General Assembly's enactment of N.C. Gen. Stat. § 7A-41, creating the new judgeship in District 10-A, included heavy caseloads and maintaining minority districts, as well as compliance with federal law and the Voting Rights Act. Such issues are compelling state interests, and the state of facts presented by the record reasonably justify the General Assembly's action to address those interests.

We conclude that the creation of the Wake County Superior Court judicial districts was not arbitrary and capricious, nor was it "clearly, positively, and unmistakably" unconstitutional sufficient to strike down the statute. *Jacobs v. City of Asheville,* 137 N.C. App. 441, 443, 528 S.E.2d 905, 907 (2000) (quotation and citation omitted); *see also Baker v. Martin,* 330 N.C. 331, 334, 410 S.E.2d 887, 889 (1991) ("[A statute] will not be declared invalid unless its un-

constitutionality be determined beyond reasonable doubt." (quotation and citation omitted)).

Reversed and vacated.

Chief Judge MARTIN and Judge GEER concur.