Janice CLARK, et al.

v.

Charles "Buddy" ROEMER, Governor,
State of Louisiana, et al.

Civ. A. No. 86–435–A.

United States District Court,
M.D. Louisiana.

Oct. 31, 1990.

Ernest L. Johnson, Baton Rouge, La., Robert McDuff, Washington, D.C., T. Richardson Bobb, Baton Rouge, La., Sylvia R. Cooks, Lafayette, La., Ulysses Thibodeaux, Newman & Thibodeaux, Al Gray, Lake Charles, La., for plaintiffs.

Kenneth C. DeJean, Kendall L. Vick, Staff Attys., La. Dept. of Justice, Baton Rouge, La., Larry S. Bankston, Carmouche, Gray & Hoffman, Baton Rouge, La., Robert G. Pugh, Shreveport, La., for Edwards, Guste and Brown.

Jerry Guillot, Adm'r, Baton Rouge, La., for La. legislature.

Michael H. Rubin, Rubin, Curry, Colvin & Joseph, Michael Chittom, Baton Rouge, La., Fred J. Cassibry, Ernest N. Morial, Robert D. Hoffman, Jr., Brook, Morial, Cassibry, Fraiche & Pizza, Jan T. Van Loon, Sandra A. Vujnovich, Orleans Trial Judges Ass'n, New Orleans, La., Clayton Lewis, Baton Rouge, La., for Tom Nelson.

Jack C. Benjamin, Marcel Garsaud, Jr., New Orleans, La., for LA Organization for Judicial Excellence, amicus curiae.

Robert P. McLeod, David E. Verlander, III, McLeod, Swearingen, Verlander, Dollar, Price & Noah, Monroe, La., for LA Second Circuit Court of Appeal—amicus curiae brief.

Peter F. Caviness, Opelousas, La., amicus curiae brief by St. Landry Parish Bar Ass'n.

Jess J. Waguespack, Assumption Bar Ass'n, Napoleonville, La., for Assumption Parish Bar, amicus curiae.

Raymond L. Cannon, Felicia Toney Williams, Moses Junior Williams, Tallulah, La., pro se.

George A. Blair, Ronald L. Wilson, Yvonne Hughes, Trial Atty., Skidmore, Hughes and Associates, New Orleans, La., for intervenor Louis A. Martinet Society.

E. Daniel Burt, Jr., Burt & LaVigne, Rebecca L. Hudsmith, Shreveport, La., for intervenor Dewey E. Burchett.

Tracy Pickerell, Baton Rouge, La., for Dolores Mason SM.

Jack C. Benjamin, New Orleans, La., for LA Organization for Judicial Excellence.

Cynthia Young Rougeou, Sp. Counsel, Baton Rouge, La., for W. Fox McKeithen, Sec. of State.

Alfred W. Speer, Baton Rouge, La., for defendant.

Lila Tritico Hogan, Hammond, La., and Carolyn Lahr Ott, Denham Springs, La., additional counsel.

Before DAVIS, Circuit Judge, and PARKER and POLOZOLA, District Judges.

POLOZOLA, District Judge:

This action was instituted by the plaintiffs under Sections 2 et seq. and 5 of the Voting Rights Act of 1965 (Act), 42 U.S.C. §§ 1973 et seq. and 1973c.[1] Plaintiffs challenge the method in which the State of Louisiana elects its district court, family court, and court of appeal judges and also seek to enjoin the election of all state district court, family court, and court of appeal judges in Louisiana which have not been precleared under Section 5 of the Act, 42 U.S.C. § 1973c.[2] A three-judge Court was convened to hear the Section 5 claim.

This matter is now before the Court to consider plaintiffs' motion to enjoin the election for any judgeship which has not been precleared by the Attorney General of the United States. The defendants object to any elections being enjoined and further seek a declaration from the Court that preclearance has already been obtained for some of the positions which are now being challenged by the plaintiffs. The parties also seek modification of certain orders previously issued by the Court.

1. The plaintiffs also alleged various constitutional violations which are not before the Court at this time.

2. The plaintiffs' Section 2 claim was heard by Judge Parker sitting as a single judge court. Following the decision rendered by the Fifth Circuit Court of Appeals in *League of United Latin American Citizens Council # 4434 v. Clements*, 914 F.2d 620 (5th Cir.1990) (*en banc*), the Section 2 claim was dismissed.

3. La. Const. art. 5, § 1. For a detailed and authoritative analysis of the judiciary article set forth in the 1974 Louisiana Constitution, *see* Hargrave, *The Judiciary Article of the Louisiana Constitution of 1974*, 37 La.L.Rev. 765 (1977).

4. La. Const. art. 5, § 22. *See also* the laws which existed prior to the adoption of the Louisiana Constitution of 1974: La. Const. of 1921, art. 7, § 69; La. Const. of 1913, arts. 109, 119, and 124; and La. Const. of 1898, art. 109.

5. La. Const. art. 5, § 14 (district judges) & § 9 (courts of appeal). *See also* La. Const. of 1921, art. 7, § 31 (district judges); La. Const. of 1921, §§ 20, 21; La. Const. of 1913, art. 100; La. Const. of 1898, art. 100; and La. Const. of 1879, art. 97 (courts of appeal).

6. *See infra* Appendix B to this opinion.

## I. BACKGROUND

In the State of Louisiana, the judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by the Louisiana Constitution.[3] Judges in Louisiana are elected by a vote of the citizens.[4] Both prior to and subsequent to the Voting Rights Act of 1965, the district judges were elected on an at-large basis by district, while the judges on the courts of appeal were elected by circuit, on both a division and an at-large basis.[5] Indeed, many of the existing judgeships in Louisiana were created prior to the passage of the Voting Rights Act of 1965.[6] "Article V [of the 1974 Constitution] on the judiciary makes few basic changes in the existing court system."[7] This statement was particularly true insofar as the selection of judges was concerned. While there was some debate over whether to adopt a merit selection system to select judges,[8] the delegates to the 1973 Constitutional Convention overwhelmingly voted to retain the concept of electing district judges on a district-wide, at-large basis and electing court of appeal judges by circuit.[9]

7. Hargrave, *supra* note 3, at 766–67.

8. 2 Projet of a Constitution for the State of Louisiana, art. VI, § 43 (La.St.L.Inst.1954).

9. Hargrave, *supra* note 3, at 814–15 (emphasis supplied, footnotes omitted):

Though the committee spent much time hearing testimony on the issue [merit selection plan], the result in favor of *election* was a foregone conclusion. The basic populist orientation of the convention tended toward a greater voice for the people and a resistance to gubernatorial or **small group power.** A convention that resisted reducing the number of state-wide elected officials and that was intent on shortening the terms of appellate judges was not likely to abolish election of judges. In any event, the political forces were such that the merit selection concept had no chance. The committee recommended election by unanimous vote.

\* \* \* \* \* \*

The convention was of a similar mind. A floor amendment that did not require, but simply authorized, the legislature to adopt a merit selection plan was overwhelmingly defeated by a vote of 26–87. In fact, the election of judges was implicit in the committee proposal, the convention adopted without objection a floor amendment making the require-

As the Louisiana Legislature added judgeships in the various district courts, family courts, and courts of appeal, the state, on most occasions, would seek preclearance of the newly enacted act from the Attorney General of the United States. However, on some occasions, the state failed to obtain the requisite preclearance.[10] Many of the judgeships which the state failed to preclear have been in existence for many years. In many instances the state sought and obtained preclearance of an additional position in a particular district in which preclearance had not been sought for an earlier position.[11]

It is in this background that the three-judge Court must decide whether the judicial elections in the State of Louisiana may proceed and whether those persons elected may take the oath of office. This Court acknowledges the seriousness of the task before it. The State of Louisiana must have judges to preside over the large number of civil and criminal matters which are now pending and which will be filed in the future. The State of Louisiana must also comply with the provisions of the Voting Rights Act of 1965, which has been passed by the Congress and held constitutional by the United States Supreme Court.

## II. PRIOR ACTION OF THE THREE-JUDGE COURT

A number of orders have been issued by this three-judge Court. On September 28, 1990, the Court issued an order allowing elections to proceed in those judgeships which had not been precleared by the Justice Department, but enjoined the winning candidates from taking the oath of office pending further orders of the Court.[12] On October 2, 1990, this Court issued an order involving elections for those judgeships created by Act 801 of the 1987 Louisiana Legislature and certain other judgeships. The three-judge Court allowed the elections for the Act 801 judgeships to proceed, but refused to allow any additional qualification for these judgeships. In addition, the three-judge Court allowed elections to proceed in certain unprecleared judgeships, and set the qualification period for these judgeships from October 3, 1990, to October 5, 1990.[13] The winners of these elec-

ment explicit by stating "all judges shall be elected."

**10.** The State of Louisiana has absolutely no excuse for its failure, whether negligent or intentional, to obtain preclearance of legislation when such preclearance is required by the Voting Rights Act of 1965. If this were the first time a three-judge court in the Middle District of Louisiana was confronted with the problem of hearing a suit seeking to enjoin an election because of the state's failure to obtain preclearance, the Court might avoid commenting on the matter. It appears to this Court that those in charge of the election process in Louisiana should undertake a very careful and detailed inventory of all legislation which relates to the election of officials in Louisiana and determine once and for all whether preclearance has been obtained from the Attorney General if such is required under the Voting Rights Act of 1965. The people of the State of Louisiana, the candidates and incumbents, and the federal courts deserve nothing less.

**11.** For reasons given *infra*, this Court has determined that these earlier positions were expressly precleared by the Attorney General when he precleared a subsequent act increasing the number of judge positions in a particular district or circuit. *See infra* Part III(B), pp. 592–93 of

this opinion and Appendix A, October 22, 1990, order, Part I, at 598–600.

**12.** Document 413 in the record. The candidates for these positions had previously qualified in July of 1990 and had begun campaigning for these positions. Absentee voting for the October 6 election had been in progress since September 24, 1990. The judgeships involved in this order were not previously enjoined by Judge Parker in the Section 2 case. These judgeships were the subject of the Justice Department's letters of objection of September 23, 1988 and May 12, 1990, and its letter of September 17, 1990.

**13.** Although the plaintiffs objected to the length of the qualification period, the period set by the Court was in accordance with the Louisiana law. The Louisiana First Circuit Court of Appeal has approved such a period of qualification in a very similar case which allowed three days for qualification. *Jones v. State,* 336 So.2d 59 (La.App. 1st Cir.), *writ denied,* 336 So.2d 515 (La.1976). (New judgeship was created by an act passed by the Louisiana Legislature on June 30, 1976, signed by the Governor on the same date, and qualifying ordered to commence July 2, 1976 and end on July 5, 1976).

tions were enjoined from taking office.[14]

On October 5, 1990, the Court issued an oral ruling which involved elections in certain court of appeal races.[15] On October 18, 1990, the Court heard oral arguments in connection with a number of motions filed by the parties. Prior to the hearing, the Court sent to the parties a list of questions on which the Court desired to hear oral arguments.[16] On October 22, 1990, after the United States Supreme Court had summarily affirmed *Brooks v. State Board of Education*, the Court issued a very detailed order.[17] In its order of October 22, 1990, the three-judge Court ruled:

1. Elections for those judgeships previously precleared by the Attorney General or which did not require preclearance under the Voting Rights Act of 1965 were to proceed as scheduled;

2. The Court determined that a number of statutes creating judicial positions in Louisiana had been precleared by the Attorney General. The Court noted that when "the Attorney General cleared statutes creating an ultimate number of judicial seats in a particular judicial district, that preclearance constituted approval of all judicial seats necessary to reach the ultimate number of judicial positions in the district." [18] The Court ordered elections for these judgeships to proceed on November 6 and December 8, 1990, as previously ordered by the Court. Finally, the Court allowed those judges from these precleared districts who were elected on October 6 or who were to be elected in the November 6 or December 8, 1990, elections to take the oath of office.[19]

3. After reviewing the record, the Court found certain judgeships had not been precleared by the Attorney General as required by Section 5 of the Voting Rights Act of 1965. Because the Court had previously allowed qualification for these judgeships to proceed and campaigning for these positions had already begun, the Court reissued its order which allowed the elections for these unprecleared judgeship positions to proceed on November 6 and December 8, 1990.[20] However, the Court's order provides that those "persons elected as judges shall serve provisionally pending the further orders of this Court." [21] Finally, the Court ordered that within ninety days "the State of Louisiana shall either obtain preclearance of the said judgeships from the Attorney General of the United States or shall file a suit for declaratory judgment with the United States District Court for the District of Columbia under the provisions of 42 U.S.C. § 1973c." [22] If preclearance is obtained from the Attorney General, or the State of Louisiana obtains a fa-

**14.** *See* documents 418, 419, and 420 in the record.

**15.** *See* document 429 in the record.

**16.** *See* documents 434 and 449B in the record.

**17.** No. CV 288–146, 1989 WL 180759 (S.D.Ga. Dec. 1, 1989), *modified*, (S.D.Ga. May 29 and June 25, 1990) (three-judge Court), *aff'd mem.*, — U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243; — U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990). *See* document 456 in the record. This order of October 22, 1990, is attached to this opinion as Appendix A.

**18.** Order of October 22, 1990, Part I, document 456 in the record; *see infra* Appendix A, at 598–599.

**19.** *Id.* at 600.

**20.** As will be noted *infra*, the Court has the right to determine what remedy is appropriate where the State has failed to obtain the requisite preclearance. This Court took into consideration the confusion an order enjoining certain elections might cause the voters since the election process had already begun with the October 6 election, based in part on a prior order issued by this Court. It must be noted that this Court's prior order was issued when this Court and the parties were considering whether Section 5 preclearance was required under the facts of this case. While the Supreme Court had held that Section 5 applied to judicial elections in *Haith v. Martin*, 618 F.Supp. 410 (E.D.N.C.1985) (three-judge court), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3268, 91 L.Ed.2d 559 (1986), there was some doubt as to whether preclearance was required when the only change was the addition of judicial positions in a district or circuit which had previously been precleared. However, subsequent to that order, the Supreme Court rendered its summary opinion in *Brooks, supra*.

**21.** Order of October 22, 1990, Part III, document 456 in the record; *see infra* Appendix A, at 600–01.

**22.** *Id.* at 600–01.

vorable ruling from its declaratory judgment suit, those judges elected may stay in office. If, however, the State of Louisiana fails to obtain approval from the Attorney General or a favorable ruling in its declaratory judgment suit, the newly elected judges of the unprecleared judgeships may only remain in office for 150 days after the finality of the judgment in that case.[23]

4. The Court enjoined the State of Louisiana from conducting an election or allowing any person to take the oath of office for judgeships created by Act 801 of the 1987 Louisiana Legislature. The Court also ordered that if this Act is precleared or otherwise approved, the state must reopen qualifications for these judicial positions.[24]

After issuing its October 22, 1990, order, the Court still had before it a motion to intervene filed by a candidate for a judgeship[25] and plaintiffs' motion to again enjoin the elections for the unprecleared positions. On October 24, 1990,[26] the three-judge Court denied the motion to intervene.[27] The Court also denied plaintiffs' motion to enjoin the election because the election dates had not been precleared by the Attor-

ney General.[28] There are now pending before this Court a motion for clarification and a motion for stay and injunction which have just been filed by the plaintiffs and shall be considered in this opinion.

### III. THE ROLE OF THE THREE–JUDGE COURT IN THIS CASE

Section 5 of the Voting Rights Act limits the jurisdiction of this three-judge Court to a determination of: "(i) whether a change was covered by § 5, (ii) if the change was covered, whether § 5's approval requirements were satisfied, and (iii) if the requirements were not satisfied, what remedy was appropriate."[29]

#### A. Does Section 5 Apply In This Case?

◼ The defendants argue that Section 5 of the Voting Rights of 1965 does not apply to judicial elections. We recognize that this Court and the United States Supreme Court have previously held that the "one-man, one-vote" principle does not apply to judicial elections.[30] However, in *Haith v. Martin*, the United States Supreme Court

---

**23.** *Id.* at 601.

**24.** *Id.* at 601. As will be noted *infra*, the Court in its October 22 order enjoined the election for these positions because the Court had previously refused to allow the qualification period for these judgeships to be reopened. Qualification for these judgeships had taken place over two years ago. In the exercise of its discretion in formulating a remedy to be followed in the unprecleared judgeships, the Court found that it could not allow these elections to proceed without reopening the qualification period. *See NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 177, 105 S.Ct. 1128, 1135, 84 L.Ed.2d 124 (1985). Because the election process had already begun and to avoid any further confusion to the voters in Louisiana, the Court enjoined these elections until further orders of the Court.

**25.** The motion to intervene was filed by H. Michael Aaron, who was a candidate for judge of the Family Court for the Parish of East Baton Rouge.

**26.** *See* document 459 in the record.

**27.** The Court found that Aaron should not be allowed to intervene as a matter of right under Rule 24(a), *St. Helena Parish School Bd. v. Hall,*

287 F.2d 376 (5th Cir.1961), *cert. denied,* 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d 33 (1961), or permissively under Rule 24(b), *Hoots v. Commonwealth of Pennsylvania,* 672 F.2d 1133 (3rd Cir.1982), of the Federal Rules of Civil Procedure.

**28.** The Court held that a "decree of the United States District Court is not within the reach of Section 5 of the Voting Rights Act." *Connor v. Johnson,* 402 U.S. 690, 691, 91 S.Ct. 1760, 1762, 29 L.Ed.2d 268 (1971); *East Carroll Parish School Bd. v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976).

**29.** *City of Lockhart v. United States,* 460 U.S. 125, 129 n. 3, 103 S.Ct. 998, 1001 n. 3, 74 L.Ed.2d 863 (1983); *United States v. Board of Supervisors of Warren County,* 429 U.S. 642, 645–47, 97 S.Ct. 833, 834–35, 51 L.Ed.2d 106 (1977) (per curiam).

**30.** *Wells v. Edwards,* 347 F.Supp. 453 (M.D.La. 1972), *aff'd mem.,* 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973). *See also Holshouser v. Scott,* 335 F.Supp. 928 (M.D.N.C.1971), *aff'd mem.,* 409 U.S. 807, 93 S.Ct. 43, 34 L.Ed.2d 68 (1972); *Voter Information Project v. City of Baton Rouge,* 612 F.2d 208 (5th Cir.1980).

held that Section 5 of the Voting Rights Act of 1965 does apply to judicial elections.[31] The issue which remained in doubt was whether the state had to obtain preclearance for additional judicial positions in a district or circuit which had previously been precleared by the Attorney General. In *Brooks*, the Supreme Court affirmed a three-judge court which had held preclearance was required in such a case.[32] Therefore, we hold that Section 5 of the Voting Rights Act of 1965 applies where additional judgeships have been added to a district or circuit which has previously been precleared by the Attorney General.

### B. Have Section 5's Approval Requirements Been Satisfied?

The State of Louisiana argues that when the Attorney General precleared subsequent additional judgeships in a particular district he thereby approved previously added, unprecleared judgeships.[33] The plaintiffs contend that each additional judgeship in a particular district must be specifically submitted to the Attorney General for approval. We find that when the Attorney General precleared statutes creating an ultimate number of judicial seats in a particular judicial district, that preclearance constituted approval of all judicial seats necessary to reach the ultimate number of judicial positions in that district.

For example, the First Judicial District Court in Caddo Parish has nine judicial positions. Four of these judgeships were in existence prior to the passage of the Voting Rights Act of 1965 and did not need preclearance.[34] The remaining positions did require preclearance from the Attorney General. The State of Louisiana submitted and obtained approval of Divisions E, G, H, and I.[35] For some reason Act 117 of 1973, which created Division F, was not submitted for approval when it passed, and the Attorney General denied preclearance on September 23, 1988. We find that when the Attorney General approved Divisions G, H, and I, he also approved Division F. We reach this conclusion because each of the Acts of the legislature which added a new division in Caddo Parish provided that the Act increased the number of judges in the district from an existing number to a new number. When the Attorney General precleared seven judicial positions in Caddo Parish at the time Division G was added, he thereby expressly approved the first six positions, which included Division F. Contrary to plaintiffs' argument, we find that there was express approval by the Attorney General for those judicial positions set forth in Part I of our October 22, 1990, order.[36] The language of the various acts [37] submitted to the Attorney General, as well as the letters [38] submitted by the

31. *Haith v. Martin,* 618 F.Supp. 410 (E.D.N.C. 1985), *aff'd mem.,* 477 U.S. 901, 106 S.Ct. 3268, 91 L.Ed.2d 559 (1986). *See also Kirksey v. Allain,* 635 F.Supp. 347 (S.D.Miss.1986).

32. *Brooks v. State Board of Elections,* No. CV 288–146, 1989 WL 180759 (S.D.Ga. Dec. 1, 1989), *modified,* (S.D.Ga. May 29 and June 25, 1990) (three-judge Court), *aff'd mem.,* —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243; —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990).

33. The State of Louisiana also argues that when the Attorney General precleared the Louisiana Constitution of 1974, he approved the concept of electing judges on an at-large basis in Louisiana. The Court rejects this argument. We find that the state has failed to prove that the preclearance of constitution preclears the method of electing judges.

34. These were Divisions A, B, C, and D.

35. Division E was added by Act 2 of 1966 and was precleared on August 18, 1986. Division G

was added by Act 46 of 1976 and precleared on August 11, 1976. Division H was added by Act 39 of 1978 and precleared on September 20, 1978. Division I was added by Act 21 of 1982 and precleared on December 2, 1982.

36. *See supra* text accompanying note 18 and *infra* Appendix A, at 599–600.

37. Article 3, Section 15(B) of the Louisiana Constitution of 1974 provides that: "A bill enacting, amending, or reviving a law shall set forth completely the provisions of the law enacted, amended, or revived. No system or code of law shall be adopted by general reference to it."

38. *See* Defendants' exhibits 1–6 which were introduced in the record at the various hearings held by the three-judge Court. There are two documents designated as D–6. In the submission to the Attorney General, the Act submitted, and in most cases the letter of submission, clearly and expressly states that the number of judges in a particular district is being increased

State of Louisiana seeking preclearance, support this conclusion. Thus, the change submitted to the Attorney General is not only the amendment, but the entire act as passed by the legislature. When the Attorney General approves the new act, he not only approves the amended portion but necessarily approves the older, reenacted part, which forms part of the new act.[39] Thus, when an act provides for a certain number of judicial positions, approval of that act must include all of the judicial positions necessary to reach that number.

■ In determining whether the preclearance sought by the State of Louisiana was proper within the meaning of Section 5 of the Voting Rights Act of 1965, the Court must determine whether the submission was in an "unambiguous and recordable manner" and whether the submission was "in fact evaluated" by the Attorney General.[40] The Court finds that the evidence presented in this case does show that the submissions were made to the Attorney General in an unambiguous manner, and he approved the various increases in the number of judges to be added to each of the districts set forth in Part I of our October 22 order.[41]

The Court also finds that preclearance was not obtained from the Attorney Gener-

al as to those judicial positions listed in Part II of the Court's October 22 order. Unlike the judicial positions which we found to have been precleared by the subsequent approval of an act increasing the number of judges in a particular district, there was no subsequent approval of the positions listed in Part II.[42] Insofar as these positions are concerned, the Court finds that acts passed by the legislature were either not submitted for preclearance, or, if submitted, preclearance was denied by the Attorney General. As to those judicial positions which have not been precleared, the Court must determine what remedy is appropriate.[43]

## C. What Remedy is Appropriate for the Unprecleared Positions?

■ Having concluded that certain judicial positions have not been precleared as required by Section 5 of the Voting Rights Act of 1965, the Court must now determine what remedy is appropriate under the facts of this case. The Court feels it is important to review the actions the Court has taken thus far insofar as the unprecleared positions are concerned.

In its order of October 22, 1990, the Court did not enjoin the election held on

from one number to another. This procedure is clearly distinct and different from the facts set forth in *McCain v. Lybrand*, 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1984), which is relied on by the plaintiff. It cannot be said that the submission by the State of Louisiana was ambiguous concerning the scope of the request.

39. The example which the Court used in our opinion involved Caddo Parish. The same reasoning was used for each of the parishes in which the court found preclearance by the Attorney General when he approved a subsequent act in a particular district. As noted earlier, those judicial positions which the court found were precleared by the Attorney General are set forth in the order of October 22, 1990, Part I, document 456 in the record, *infra* in Appendix A, at 599–600.

40. *Allen v. State Bd. of Elections*, 393 U.S. 544, 571, 89 S.Ct. 817, 834, 22 L.Ed.2d 1 (1969); *United States v. Board of Comm'rs of Sheffield, Alabama*, 435 U.S. 110, 136, 98 S.Ct. 965, 981, 55 L.Ed.2d 148 (1978); *McCain v. Lybrand*, 465 U.S. 236, 249, 104 S.Ct. 1037, 1046, 79 L.Ed.2d 271 (1984).

41. The evidence submitted by the parties indicates that the Attorney General approved the method Louisiana used for adding judges approximately 81 times. Preclearance was denied on only three dates: September 23, 1988; May 12, 1989; and September 17, 1990. These denials came after Judge Parker had rendered his decision in the Section 2 case on August 15, 1988.

42. The Court originally concluded that Section B in the 20th Judicial District was not precleared. Now, in accordance with the Court's reasons, *infra* text pp. 597–98 of this opinion, the Court finds that this judicial position was precleared. *See* Defendants' exhibit D–4.

43. This court does not have the power to order the Attorney General to preclear a statute, nor does it have the power to equitably preclear a statute no matter how long it may have been in force. *McCain v. Lybrand*, 465 U.S. at 249–53, 104 S.Ct. at 1046–47.

October 6, or the elections to be held on November 6 and December 8, 1990. As noted in the Court's summary of the orders issued by the three-judge Court in this case,[44] qualifying for some of these judicial positions had begun before any hearing was requested to enjoin these elections. Absentee voting had begun on September 24 for the October 6 elections. Because of the confusion over whether Section 5 applied where additional judges were added in districts or circuits which had previously been precleared by the Attorney General, the three-judge Court had permitted the October 6 election to proceed, and ordered elections to be set for November 6 and December 8, 1990. Much time and expense had been expended by the candidates for these elections. The election set for October 6 coincided with an election for a United States Senator and numerous other offices, as well as approval of several constitutional amendments.[15] Furthermore, November 6 is the date for general elections for United States Senators and Representatives. It was the Court's desire to have these judicial elections coincide with these other major elections to ensure high voter participation.[46] To have enjoined the elections for some of the judge races would have only increased the voter confusion. While the Court does not intend to place the blame on any one party, the request for an injunction of the unprecleared judicial positions came very close to the October 6 election day. Furthermore, the Fifth Circuit rendered its *en banc* decision in

*League of United Latin American Citizens Council #4434 v. Clements (LULAC)*, 914 F.2d 620 (5th Cir.1990). *LULAC* had an important and direct effect on the Section 2 claim which was being handled by Judge Parker.[47] Judge Parker had enjoined certain judicial elections because he found Section 2 violations. After the Fifth Circuit's *en banc* decision, Judge Parker lifted his injunction and later dismissed the Section 2 claim. The judicial positions that were enjoined in the Section 2 claim included both precleared and unprecleared judgeships. At the time the Court conducted the hearing which led to its October 22 order, it was obvious that the candidates had begun campaigning and spending money in reliance on the Court's prior decisions ordering elections to be held on October 6, November 6, and December 8, 1990. Furthermore, the Supreme Court had not yet rendered its decision in *Brooks* at the time the Court conducted its hearing.[48]

Thus, the Court, sitting as a court of equity, had to balance the "interest of state and local authorities in managing their own affairs consistent with the Constitution"[49] with the rights of the plaintiffs under the Voting Rights Act of 1965. The Court also had to consider what effect its decision would have on the voters in the pending elections. Finally, the Court had to consider the effect of its decision on the state's judicial system, both past and future. We are not unmindful of the fact that the state itself is responsible for the consequences of its failure to comply with Section 5. How-

---

**44.** *See supra* Part II, pp. 589–91 of this opinion.

**45.** One of the issues on the ballot concerned whether a lottery should be allowed in Louisiana. This issue, as well as the election for United States Senator, had attracted substantial voter interest. This factor was taken into consideration by the three-judge Court when it approved the dates for the election.

**46.** In *NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 178, 105 S.Ct. 1128, 1135, 84 L.Ed.2d 124 (1985), the Supreme Court noted: "In addition, an election in March is likely to draw significantly fewer voters than an election held simultaneously with a general election in November." (footnote omitted)

**47.** *Clark v. Edwards,* 725 F.Supp. 285 (M.D.La. 1988).

**48.** *Brooks v. State Bd. of Educ.,* No. CV 288–146, 1989 WL 180759 (S.D.Ga. Dec. 1, 1989), *modified,* (S.D.Ga. May 29 and June 25, 1990) (three-judge Court), *aff'd mem.,* —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243; —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990). The memorandum opinion of the Supreme Court was rendered on October 15, 1990. This memorandum opinion was important insofar as the issue of whether Section 5 applied to judicial elections was concerned.

**49.** *Spallone v. United States,* —— U.S. ——, ——, 110 S.Ct. 625, 632, 107 L.Ed.2d 644 (1990), relying on *Milliken v. Bradley,* 433 U.S. 267, 280–81, 97 S.Ct. 2749, 2757, 53 L.Ed.2d 745 (1977).

ever, we believe the potential harm to all of the citizens of Louisiana outweighs the potential harm, if any, of allowing the elections to continue, with the winning candidates being seated on a provisional basis. To remove judges from unprecleared positions or to fail to vest them with the full power and authority of their office even on a provisional basis could lead to the possible reversal of convictions in criminal cases and cast a shadow on civil judgments.

Furthermore, to completely shut down these unprecleared positions under the facts of this case would only cause additional hardships on litigants and create more problems in the criminal justice system in Louisiana.[50]

Considering the above factors, the Court decided in its October 22 order to allow the elections for the judicial positions which had not been precleared to continue. However, the Court ordered that candidates could only "serve provisionally pending further orders of this Court."[51] The Court also set a deadline for the State of Louisiana to either obtain preclearance of the judicial positions from the Attorney General or to file a suit for declaratory judgment with the United States District Court for the District of Columbia.[52] Provisions were set forth in the order for the removal of judges elected to unprecleared judgeships if the state did not obtain relief from the Attorney General or the District Court

for the District of Columbia.[53] The Court also ordered judges elected to these unprecleared positions removed if the State of Louisiana chose to do nothing.[54]

The action taken by the three-judge Court in this case closely parallels action taken in similar cases by the United States Supreme Court and other three-judge courts.[55] In *Perkins v. Matthews,* the United States Supreme Court noted that "[i]n certain circumstances ... it might be appropriate to enter an order affording local officials an opportunity to seek federal approval and ordering a new election only if local officials fail to do so or if the required federal approval is not forthcoming."[56] The *Perkins* Court also noted that in determining the appropriate remedy to be followed in cases in which the state had not obtained the requisite preclearance "other factors might be relevant, such as the nature of the changes complained of, and whether it was reasonably clear at the time of the election that the changes were covered by § 5."[57] Furthermore, the Supreme Court noted:

> Since the District Court is more familiar with the nuances of the local situation than are we, and has heard the evidence in this case, we think the question of the appropriate remedy is for that court to determine, in the first instance, after

**50.** All parties to this litigation concede that the legislature added positions to the various district courts and the courts of appeal because the caseload required such. There are no allegations that the additional judges were added in a racially discriminatory manner. It is the concept of electing judges on an at-large basis that is the subject of the discrimination charge in this case.

**51.** Order of October 22, 1990, Part III(1), document 456 in the record; *see infra* Appendix A, at 600–01.

**52.** *Id.,* Part III(2), (3), and (5), at 600–01.

**53.** *Id.,* Part III(5) and (6), at 601.

**54.** *Id.,* Part III(6).

**55.** *See Brooks v. State Bd. of Educ.,* No. CV 288–146, 1989 WL 180759 (S.D.Ga. Dec. 1, 1989), *modified,* (S.D.Ga. May 29 and June 25, 1990)

(three-judge Court), *aff'd mem.,* — U.S. —, 111 S.Ct. 288, 112 L.Ed.2d 243; — U.S. —, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990); *NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985); *Berry v. Doles,* 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978); *United States v. County Comm'n, Hale County, Alabama,* 425 F.Supp. 433 (S.D.Ala.1977), *aff'd mem.,* 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977); *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *Scaggs v. Larsen,* 396 U.S. 1206, 90 S.Ct. 5, 24 L.Ed.2d 28 (1969); *Moore v. Leflore County Bd. of Election Comm'rs,* 351 F.Supp. 848 (N.D.Miss.1971); *Wilson v. North Carolina State Bd. of Elections,* 317 F.Supp. 1299 (M.D.N.C.1970).

**56.** 400 U.S. 379, 396–97, 91 S.Ct. 431, 441, 27 L.Ed.2d 476 (1971); *see also Berry v. Doles,* 438 U.S. at 192, 98 S.Ct. at 2693.

**57.** 400 U.S. at 396, 91 S.Ct. at 441.

hearing the views of both parties.[58]

We have concluded that it would be in the best interest of all concerned to allow the elections to proceed and to allow the newly elected judges to take office on a provisional basis while at the same time requiring the state to obtain preclearance from the Attorney General or the United States District Court for the District of Columbia. If the state obtains approval from the Attorney General, or if relief is granted by the District Court for the District of Columbia, the elections will stand. Otherwise, the court must set aside the elections. Such a procedure has been followed by the United States Supreme Court. Thus, in *NAACP v. Hampton County Election Commission*,[59] the Supreme Court, following *Berry v. Doles* [60] noted:

> As in *Berry v. Doles*, supra, it is appropriate in these circumstances for the District Court to enter an order allowing appellees 30 days in which to submit these changes to the Attorney General for approval. If appellees fail to seek this approval, or if approval is not forthcoming, the results of the March 1983 election should be set aside. If, however, the Attorney General determines that the changes had no discriminatory purpose or effect, the District Court should determine, in the exercise of its equitable discretion, whether the results of the election may stand.[61]

A similar holding was set forth in *Berry* where the Court declared that "[i]f approval is obtained, the matter will be at an end. If approval is denied, appellants are free to renew to the District Court their request for simultaneous elections of all members

of the Board at the 1978 general election." [62] In *United States v. County Commission, Hale County, Alabama*, the United States Supreme Court approved an order very similar to that issued by this court:

> That the November 2, 1976 election be held as scheduled; and that the two persons elected as Commissioners in said election and the other two members of the Hale County Commission shall serve provisionally pending the further orders and decrees of this court, and vested with all the power, authority, and duties accorded by law.[63]

Justice Black, sitting as a Circuit Justice, refused to enjoin an election in *Oden v. Brittain*, stating:

> Intervention by the federal courts in state elections has always been a serious business. Here the city has already incurred considerable expense in preparing for an election to be held within the next three weeks. If this election were held, applicants could later bring suit to have it set aside. I thus do not see why these plans should be stopped in midstream in a case in which the legal issues are unclear, when the election cannot result in the severe irreparable harm necessary to justify the issuance of the extraordinary remedy of an injunction by an individual Justice.[64]

Other three-judge courts have allowed incumbents to remain in office or an election to proceed contingent on the state seeking approval from the Attorney General or the District Court for the District of Columbia, including the courts in *Brooks* [65] and *Moore v. Leflore County Board of Election Com-*

**58.** *Id.* at 397, 91 S.Ct. at 441 (footnote omitted).

**59.** 470 U.S. 166, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985).

**60.** 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978).

**61.** 470 U.S. at 182–83, 105 S.Ct. at 1137–38 (citation omitted).

**62.** 438 U.S. at 193, 98 S.Ct. at 2694.

**63.** 425 F.Supp. 433, 436 (S.D.Ala.1977), *aff'd mem.*, 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977). The three-judge court also set a deadline for the state to seek approval from the Attorney General.

**64.** 396 U.S. 1210, 1211, 90 S.Ct. 4, 5, 24 L.Ed.2d 32 (1969).

**65.** In *Brooks*, the three-judge court noted: "Thus, we believe it is appropriate for us to follow the course set out in *Berry* and *N.A.A.C.P. v. Hampton County*." 1989 WL 180759 at 21.

*missions.*[66]

Finally, in *Georgia v. United States,*[67] the United States Supreme Court found itself in a dilemma similar to the one this Court faces under the facts of this case. The Supreme Court had stayed a three-judge order which had enjoined an election. The State of Georgia then proceeded with the election. The Supreme Court refused to set aside the election conducted by the State of Georgia stating:

> For the foregoing reasons, the judgment of the District Court is affirmed. Since, however, elections were conducted under the disputed 1972 plan by reason of this Court's stay order, it would be inequitable to require new elections at this time.[68]

This Court has previously ordered the elections to proceed in this case. Acting pursuant to this Court's orders, the state printed ballots, opened qualifications, and set election dates as ordered by the Court. The candidates proceeded to qualify and to campaign. When the Court issued its order of October 22, 1990, the election of October 6 had already taken place, and run-offs were scheduled for the November 6 general election. Those candidates who did not participate in the October 6 election were campaigning for the November 6 election. The Court believes that "it would be inequitable" to stop the election process being conducted under the authority of an order issued by this Court. This is particularly so since the Court has provided that the winning candidates will only take office provisionally. If the State of Louisiana obtains preclearance or relief in a declaratory action filed with the District Court in the District of Columbia, "the matter will

be at an end." [69] If the state fails to obtain the requisite preclearance from the Attorney General or relief from the District Court in the District of Columbia, the results of the October 6, November 6, and December 8 elections involving unprecleared judicial positions "should be set aside." [70] The Court believes such a procedure is equitable under the facts of this case and protects the rights of all of the citizens of the State of Louisiana, while at the same time enforcing the provisions of the Voting Rights Act of 1965.

After this Court rendered its October 22 order, the plaintiffs' filed a "Motion For Clarification and Reconsideration of the Three–Judge Court's October 22 Order Regarding Certain Judgeships." [71] The plaintiffs also filed a "Motion to the Three–Judge Court for Stay and Injunction Pending Appeal." [72] The Court shall discuss each of these motions separately.

## IV. PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION

The plaintiffs have filed a motion seeking to have the Court reconsider its October 22 order insofar as it applies to certain judgeships set forth in Part I of the Court's order. In Part I of the order of October 22, the Court set forth those judicial positions which the Court found to have been precleared by the Attorney General. Specifically, plaintiffs ask the Court to review its decision on the following judicial positions: 10th District, Divisions A and B, and 39th District, Division A; all judgeships in the First Circuit Court of Appeal; and the

---

**66.** 351 F.Supp. 848 (N.D.Miss.1971). In *Moore,* the court ruled:

> Instead, we authorize and allow the general election to proceed as scheduled for the at-large election of county supervisors subject to stated conditions.... We reserve for decision at that time the issue of whether, under *Sheffield v. Itawamba County Board of Supervisors, supra,* 439 F.2d 35 (5th Cir.1971) this court, sitting as a court in equity and in the exercise of its discretion, should order the election of new supervisors on at-large basis or by districts as redistricted in accordance with the approved plan.

351 F.Supp. at 852–53.

**67.** 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973).

**68.** 411 U.S. at 541, 93 S.Ct. at 1711.

**69.** *Berry,* 438 U.S. at 193, 98 S.Ct. at 2694.

**70.** *Hampton County,* 470 U.S. at 183, 105 S.Ct. at 1137–38.

**71.** Document 462 in the record.

**72.** Document 466 in the record.

at-large judgeships in the Second and Third Circuits.[73]

The Court has again reviewed the record and finds that its decision which held that the judicial positions set forth in Part I of its October 22 order have been precleared by the Attorney General is correct for the reasons previously cited in this opinion. We also find that the Attorney General specifically precleared the division of the 10th and 39th Judicial Districts into two separate districts when he approved judicial positions for both districts. Finally, we conclude that when the Attorney General precleared Act 3 of the 1981 Louisiana Legislature on August 26, 1981, he expressly precleared the number of judges and divisions for each of the circuits.[74]

The Court on its own motion does find that one judicial position which the Court initially found to be unprecleared has in fact been expressly precleared by the Attorney General. This district is District 20, Division B. Exhibit D-4, which was filed in the record, clearly shows that the split of District 20 into two parishes and the creation of Division B was expressly submitted and approved by the Attorney General. Therefore, the Court hereby amends its October 22 order to delete District 20, Division B from the unprecleared list in Part II of the order. The Court orders this judicial position to be included in Part I of the October 22 order which sets forth precleared judicial positions.

Therefore, except as amended herein regarding District 20, Division B, plaintiffs' motion for clarification and reconsideration is denied.

## V. PLAINTIFFS' MOTION FOR STAY AND INJUNCTION PENDING APPEAL

The final motion before the Court is plaintiffs' motion for a stay and injunction pending appeal. We deny this motion.

The Court believes that, considering the facts of this case, it has issued appropriate orders in the exercise of its equitable jurisdiction in accordance with precedent and authority of the United States Supreme Court and other three-judge courts. The rights of all parties have been protected and the provisions of the Voting Rights Act of 1965 have been enforced.

Therefore, plaintiffs' motion for stay and injunction pending appeal is denied.

## VI. CONCLUSION

The Court has given very careful consideration to the arguments of all of the parties in this very difficult case. The Court believes the orders it has issued in this case are equitable under the facts of this case. At the same time, the Court must sound a very clear and direct warning to the State of Louisiana. If the State of Louisiana does not seek or otherwise obtain preclearance in accordance with the Voting Rights Act of 1965 of those judicial positions which this Court has found to be unprecleared, this Court SHALL ENFORCE its order requiring removal of judges from those unprecleared positions. While the Voting Rights Act of 1965 has been criticized and may be controversial, it is the law of this country until repealed by the Congress or found to be unconstitutional by the United States Supreme Court. As such, the Act shall be enforced by this Court.

This Court shall retain supervisory jurisdiction of this case for whatever further relief may be necessary or required.

## APPENDIX A

### ORDER

### Filed October 22, 1990

This matter is before the Court for a reconsideration of the prior orders issued

---

73. Plaintiffs also contend that this Court precleared judgeships in the 17th and 32d judicial districts even though there were no Section 5 objections made on those two districts. Whether there is an objection filed or not, the Court's decision that these judicial positions have been precleared by the Attorney General is correct.

74. The state's six page letter of July 29, 1981, to the Attorney General explained in detail the changes made by Act 3 of 1981. On page 4 of the letter, it is stated: *"Prior law* provided for alphabetical divisions (A, B, C, ...) within each district of the First Circuit. *New law* provides the same for all court of appeal circuits." (emphasis in original).

by this Three Judge Court. Considering *Brooks v. State Board of Elections*, No. CV 288–146, 1989 WL 180759 (S.D.Ga. Dec. 1, 1989), *modified*, (S.D.Ga. May 29 & June 25, 1990) (Three–Judge Court), *aff'd mem.*, (U.S. Oct. 15, 1990) (Nos. 90–272 & 90–332), and for more detailed reasons which shall be set forth in an opinion to follow, we issue the following order:

I.

IT IS ORDERED, ADJUDGED AND DECREED that the election shall proceed as scheduled for judgeships individually precleared by the Attorney General or in which preclearance was not required be-cause the judgeship predated the Voting Rights Act of 1965.

IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that in addition we have determined that when the Attorney General cleared statutes creating an ultimate number of judicial seats in a particular judicial district, that preclearance constituted approval of all judicial seats necessary to reach the ultimate number of judicial positions in that district. Therefore, we find that the following positions in judicial districts of the State of Louisiana have been precleared in this manner by the Attorney General of the United States as required by Section 5 of the Voting Rights Act of 1965:

(1) DISTRICT COURTS

| JDC | PARISH | DIVISION |
|-----|--------|----------|
| 1st | Caddo | F |
| 4th | Morehouse & Ouachita | D |
| 9th | Rapides | D |
| | | E |
| 10th | Natchitoches | A |
| | | B |
| 15th | Acadia, Lafayette & Vermillion | E |
| | | F |
| | | H |
| | | I |
| 16th | Iberia, St. Martin & St. Mary | D |
| 17th | Lafourche | A |
| | | B |
| | | C |
| | | D |
| 18th | Iberville, Point Coupee & West Baton Rouge | C |
| 21st | Livingston, St. Helena & Tangipahoa | D |
| 23d | Ascension, Assumption & St. James | C |
| 24th | Jefferson | H |
| | | I |
| | | J |
| | | K |
| 27th | St. Landry | C |
| 29th | St. Charles | C |
| 32d | Terrebonne | C |
| 39th | Red River | A |

(2) COURTS OF APPEAL

| CIRCUIT | DISTRICT | DIVISION |
|---------|----------|----------|
| 1st | 1 | All |
| 1st | 2 | All |
| 1st | 3 | All |
| 2d | at large | at large |
| 3d | at large | at large |

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the elections for these judgeships set for November 6, 1990 and December 8, 1990 SHALL PROCEED as scheduled.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any candidate who was elected in the October 6, 1990 election in these precleared judgeships shall be allowed to take the oath of office and serve the regular term of office.

## II.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following positions in judicial districts of the State of Louisiana have not been precleared by the Attorney General of the United States as required by Section 5 of the Voting Rights Act of 1965:

(1) DISTRICT COURTS

| JDC | PARISH | DIVISION |
| --- | --- | --- |
| 4th | Morehouse & Ouachita | F |
| | | G |
| 6th | East Carroll, Madison & Tensas | B |
| 14th | Calcasieu | E |
| | | F |
| | | G |
| | | H |
| 16th | Iberia, St. Martin & St. Mary | G |
| 20th | East Feliciana & West Feliciana | B |
| 21st | Livingston, St. Helena & Tangipahoa | F |
| 22d | St. Tammany & Washington | G |
| 24th | Jefferson | P |
| 26th | Bossier & Webster | E |
| 34th | St. Bernard | D |
| 40th | St. John the Baptist | C |

(2) COURTS OF APPEAL

All judgeships authorized by Act 8 of 1990 including:
    (a) Second Circuit Court of Appeal, District 1, Division C;
    (b) Second Circuit Court of Appeal, District 3, Division C.

---

## III.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following course of action shall be followed for those elections which have been held and which shall be held on November 6, 1990 and December 8, 1990 for those judgeships set forth in Paragraph II which have NOT been precleared by the Attorney General of the United States as required by Section 5 of the Voting Rights Act of 1965:

(1) Those persons elected as judges shall serve provisionally pending the further orders of this Court, and vested with all the power, authority and duties accorded by law.

(2) Within ninety days of the date of this order, the State of Louisiana shall either obtain preclearance of the said judgeships from the Attorney General of the United States or shall file a suit for a declaratory judgment with the United States District Court for the District of Columbia under the provisions of 42 U.S.C. § 1973c.

(3) If the State of Louisiana files such a declaratory judgment, the incumbent judges may continue to serve in the unprecleared judgeships until one of the following events occurs:

(a) this order requiring preclearance is reversed by the United States Supreme Court;

(b) the State of Louisiana obtains a favorable declaratory judgment from the suit filed in the United States District Court for the District of Columbia;

(c) the Attorney General of the United States approves and preclears the legislation creating the judicial seat in question;

(d) the Attorney General of the United States approves and preclears a new statutory scheme adopted by the State of Louisiana for the election of judges, and an election is conducted pursuant to that scheme.

(4) Should the event described in either subsections 3(a), (b), or (c) occur, these incumbent judges may remain in office and serve the remainder of their terms of office.

(5) Should the State of Louisiana fail to obtain a favorable declaratory judgment from the suit filed in the United States District Court for the District of Columbia, the incumbent judges in the unprecleared judgeships may remain in office for 150 days after the finality of the judgment in that case.

(6) Should the State of Louisiana fail to obtain preclearance from the Attorney General of the United States or fail to file a suit for a declaratory judgment with the United States District Court for the District of Columbia within the time period set forth in paragraph III(2) above, the incumbent judges in the unprecleared judgeships may remain in office for 150 days following the expiration of that time period.

(7) In the event any vacancy should occur in the unprecleared judgeships by reason of death, resignation or otherwise, such vacancy may be filled according to Louisiana law.

### IV.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Louisiana shall be enjoined from conducting an election or allowing any person to take the oath of office for the following judgeships:

(1) All judgeships authorized by Act 801 of 1987 including:

(a) Third Circuit Court of Appeal, District 1, Division C;

(b) Third Circuit Court of Appeal, District 2, Division C;

(c) Third Circuit Court of Appeal, District 3, Division C.

### APPENDIX B

#### DISTRICT COURT POSITIONS WHICH PREEXISTED THE VOTING RIGHTS ACT OF 1965

| JDC | PARISH | DIVISION(S) |
|-----|--------|-------------|
| 1st | Caddo | A,B,C,D |
| 2d | Bienville, Claiborne, Jackson | A,B |
| 3d | Lincoln, Union | A |
| 4th | Morehouse, Ouachita | A,B,C |
| 5th | Franklin, Richland, West Carroll | A,B |
| 6th | East Carroll, Madison, Tensas | A |
| 7th | Catahoula, Concordia | A |
| 8th | Winn | A |
| 9th | Rapides | A,B |
| 11th | Desoto, Sabine | A,B |
| 12th | Avoyelles | A |
| 13th | Evangeline | A |
| 14th | Calcasieu | A,B,C,D |
| 15th | Acadia, Lafayette, Vermillion | A,B,C |
| 16th | Iberia, St. Martin, St. Mary | A,B,C |

**602**

| JDC | PARISH | DIVISION(S) |
|---|---|---|
| 17th | Lafourche | A,B |
| 18th | Iberville, Pointe Coupee, West Baton Rouge | A,B |
| 19th | East Baton Rouge | A,B,C,D |
| 20th | East Feliciana West Feliciana | A |
| 21st | Livingston, St. Helena, Tangipahoa | A,B |
| 22nd | St. Tammany, Washington | A,B |
| 23rd | Ascension, Assumption St. James | A,B |
| 24th | Jefferson | A,B,C,D,E |
| 25th | Plaquemines | A,B |
| 26th | Bossier, Webster | A,B |
| 27th | St. Landry | A,B |
| 29th | St. Charles | A,B |
| 30th | Vernon | A |
| 31st | Jefferson Davis | A |
| * | Orleans (Civil) | A,B,C,D,E,F,G,H |
| * | Orleans (Criminal) | A,B,C,D,E,F,G,H |